UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DORA SALIA MALDONADO | § | |
| DORA L. MUÑOZ | § | |
| ROGELIO CAZARES JR. | § | |
| JORGE A. SALAZAR | § | A CIVIL ACTION _____ |
| PALMIRA MUÑOZ | § | |
| CHRIS YATES | § | |
| SANTOS LEAL | § | |
|     PLAINTIFFS | § | |
| | § | |
| RICARDO RODRIGUEZ JR., IN HIS | § | |
| INDIVIDUAL AND OFFICIAL CAPACITIES AS | § | |
| DISTRICT ATTORNEY OF HIDALGO | § | |
| COUNTY, TEXAS; AND HIDALGO COUNTY, | § | A JURY IS DEMANDED |
| TEXAS. | § | |
|     DEFENDANTS | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

The defendants retaliated against Dora Salia "Sallie" Maldonado, Dora L. Muñoz, Rogelio "Roy" Cazares Jr., Jorge A. Salazar, Palmira Muñoz, Chris Yates, and Santos Leal ("Plaintiffs") by firing them because each supported Rene Guerra, who unsuccessfully ran against Ricardo Rodríguez in the election for Hidalgo County District Attorney and because of being associated with a person who was a supporter of Rene Guerra. The Plaintiffs' political activity and right of association is protected under the First Amendment of the Constitution of the United States, and the defendants, jointly and severally, violated the law by firing them in retaliation for that activity.

<u>**PARTIES**</u>

1.  Plaintiff Dora Salia "Sallie" Maldonado is a resident of Hidalgo County, Texas.

2.  Plaintiff Dora L. Muñoz is a resident of Bexar County, Texas.

3.  Plaintiff, Rogelio "Roy" Cazares Jr., is a resident of Hidalgo County, Texas.

4.  Plaintiff, Jorge A. Salazar, is a resident of Hidalgo County, Texas.

5.  Plaintiff, Palmira Muñoz, is a resident of Hidalgo County, Texas.

6.  Plaintiff, Chris Yates, is a resident of Cameron County, Texas.

7.  Plaintiff, Santos Leal, is a resident of Hidalgo County, Texas.

8. One defendant is Ricardo Rodriguez, who is sued in his individual capacity and in his official capacity as Hidalgo County District Attorney. Rodriguez may be served with process at the office of Hidalgo County District Attorney at 100 E. Cano St. 2nd floor Edinburg, Texas 78539.

9.  The second defendant is Hidalgo County, Texas, which is a governmental entity organized under Texas law. Hidalgo County, Texas, may be served with process through The Hidalgo County Judge Ramon Garcia at 100 E. Cano St. 2nd floor Edinburg, Texas 78539.

<u>**JURISDICTION**</u>

10. This case is brought under 42 U.S.C. § 1983 for the violation of the plaintiffs' first amendment rights. The Court has jurisdiction of this case according to 28 U.S.C. §§ 1331 and 1343.

11. Venue is invoked pursuant to 28 U.S.C. § 1391.

## STATEMENT OF THE PLAINTIFFS' CASE

12. Before the general election of 2014, Rene Guerra served as the District Attorney of Hidalgo County. Rene Guerra held this elected position from 1982 to the end of 2014. Ricardo Rodriguez ran against Rene Guerra in the 2014 election and defeated Rene Guerra. Rodriguez took office as the District Attorney of Hidalgo County on or about January 1, 2015.

### PLAINTIFF--DORA L. MUÑOZ

13. Plaintiff Dora L. Muñoz was an active supporter of Rene Guerra in his 2014 campaign for re-election to the position of District Attorney.

14. Dora L. Muñoz has been a law enforcement officer since 1986, after graduating from the Lower Rio Grande Valley Regional Police Academy. She began her career with the Weslaco Police Department assigned to the Patrol Division. In 1987, Dora L. Muñoz resigned from the Weslaco Police Department after accepting a position with the McAllen Police Department as a Patrol Officer.

15. While employed with the McAllen Police Department, Dora L. Muñoz was promoted to Criminal Investigator assigned to the Youth Crisis Intervention Unit. In 1989, the division was the recipient of the McAllen Police Department, Unit Citation Award. Dora L. Muñoz was also selected and assigned as a hostage negotiator.

16. While maintaining an extensive caseload, Dora L. Muñoz received several letters of commendation and routinely volunteered and participated as a Board Member with various law enforcement and civic organizations.

17. In 1992, Plaintiff Dora L. Muñoz was hired by Rene Guerra, Hidalgo County District Attorney, as a Criminal Investigator. While employed, Dora L. Muñoz was twice elected as

3

Board Member with the Texas District & County Attorney's Association's ("TDCAA"), Investigator Section and was a recipient of the TDCAA Professional Criminal Investigator Award.

18. In 1997, she was assigned as a Task Force Agent with the Hidalgo County High Intensity Drug Trafficking Area Task Force ("HIDTA").

19. Hidalgo County HIDTA was established in 1992 pursuant to an agreement between the Hidalgo County District Attorney's Office and South Texas HIDTA. This was a joint effort between these agencies whose mission is to disrupt and dismantle drug trafficking organizations operating in and around the agency's area of responsibility.

20. As a Task Force Agent, Dora L. Muñoz's duties were to investigate, arrest, and prosecute individuals involved in drug trafficking and money laundering. Dora L. Muñoz enforced federal, state, and local controlled substances, narcotics, and marijuana laws. She conducted enforcement operations, interviewed witnesses, interrogated individuals suspected of drug trafficking, and performed surveillance.

21. During her assignment as Task Force Agent, Plaintiff Dora L. Muñoz was involved in multiple federal, state and local criminal investigations that resulted in the arrest and conviction of hundreds of individuals, and the seizure of US currency and assets valued over millions of dollars. As a result, Plaintiff Dora L. Muñoz was the recipient of the first Hidalgo County HIDTA Certificate of Appreciation award. She was also awarded two (2) commendations by the United States Attorney's Office of the Southern District for her exceptional performance in the HIDTA investigations. And she was recognized as Narcotics Agent of the Year, South Region, by the Texas Narcotics Officers Association.

4

22. On January 1, 2005, Plaintiff Dora L. Muñoz was promoted to the position of the Commander of HIDTA. During her service in that position, she established a close working relationship with federal state and local law enforcement agencies, the community, and the media.

23. This was not the type of job where political allegiance to Rodriguez was necessary to the effective formation and administration of the defendants' policies. Her job duties were ministerial in nature. She was not an employee whose decisions created or implemented policies. Nor did she have discretion in the performance of her duties or in selecting what duties to perform that were not severely limited by statute, regulation, or policy determinations made by the defendants or any supervisor.

24. As the Commander, Dora L. Muñoz's duties and responsibilities included executive management authority over all task force administrative and enforcement operations, asset forfeiture, drug awareness, and intelligence units. She also reviewed and approved all operational plans to ensure the safety and well-being of the public, task force officers, covert operatives, law enforcement personnel, and targets; and. provided tactical and strategic leadership, presided over briefings and debriefings of all operations.

25. In 2010 the Office of the President- National Drug Control Policy selected HIDTA to receive the Outstanding Task Force- Interdiction Effort of the Year award at the National HIDTA Conference Awards Ceremony in Washington, DC.

26. Under Dora L. Muñoz's command, one member of the task force received the Texas Narcotics Officers Association's Supervisor of the Year and another was selected as Task Force Agent of the Year.

27. Rene Guerra served as the Hidalgo County District Attorney for 32 years. Dora L. Muñoz was an employee of that entity for 23 of those years. She held Rene Guerra in the highest regard, respected his professionalism and commitment to serving the community, and wanted him to continue in that position of responsibility.

28. Accordingly, she openly supported Guerra when he ran for re-election in 2014. This fact was well-known in the community and to the defendants. Her support for Rene Guerra included the following:

- She posted a Re-Elect Rene Guerra signs in her front lawn;

- She wore Re-Elect Rene Guerra t-shirts off duty and in public;

- She accompanied Guerra to debates against Rodriguez;

- She had re-elect Rene Guerra bumper sticker on her personal car;

- She went door-to-door in the community soliciting support for Guerra's re-election bid; and

- Appeared as a supporter in several photographs on Guerra's campaign Facebook page;

29. Following Rodriguez's election, but before he took office, Dora L. Muñoz became aware that Rodriguez intended to fire her and a host of others who served under and supported Guerra's bid for re-election as soon as he took office.

30. On January 2, 2015, just after Rodriguez took office as the District Attorney, Dora L. Muñoz's was fired "at the directive of Mr. Rodriguez."

31. No official in the District Attorney's office ever offered Dora L. Muñoz any reason why she was terminated. There was no legitimate reason to do so.

6

32. Dora Muñoz was replaced by Jose Delgado.

33. Initially, Rodriguez reported to the State of Texas that she was "Dishonorably Discharged". The likelihood of any law enforcement officer obtaining another job in that field with a dishonorable discharge is so slim as to be non-existent. Fortunately, this designation was later changed to "Honorable" after Dora L. Muñoz filed an appeal with the Texas Commission on Law Enforcement.

34. Throughout her employment with the Hidalgo County District Attorney's Office, Dora L. Muñoz served the citizens of Hidalgo County and individuals well beyond the boundaries of Hidalgo County and the State of Texas in an exemplary fashion.

### PLAINTIFF—DORA SALIA "SALLIE" MALDONADO

35. Maldonado was an employee of Hidalgo County for over 20 years from February 6, 1995 through August 7, 2015.  She held a number of positions during her years of employment. The lateral department transfers benefited the Departments and the County in order to improve productivity and morale.  She worked as an Administrative Assistant Auditor for the Hidalgo County District Clerk's Office; she also worked as an Assistant Court Coordinator for the 398th Judicial District Court and a Court Coordinator for the 389th Judicial District Court, both in Hidalgo County.  She served as a Legal Secretary and a Legal Assistant; and most recently as an Administrative Assistant III at the District Attorney's Office from March 28, 2011 to August 7, 2015, when she was terminated. This was not the type of job where political allegiance to Rodriguez was necessary to the effective formation and administration of Rodriguez's policy.

36. Maldonado too openly supported Guerra in his 2014 campaign for re-election. This

fact was well-known in the community and to the defendants. Maldonado's support for Rene Guerra included the following:

- She and her father in law, Pepe Maldonado, co-hosted a fundraiser for Guerra;

- She posted a Re-Elect Rene Guerra sign in her front lawn;

- She volunteered at polling sites supporting Guerra;

- She decorated and attended Guerra's 2014 campaign kickoff;

- Appeared as a supporter in several photographs on Guerra's campaign Facebook page;

- She had a Re-Elect Rene Guerra bumper sticker on her personal car; and

- She wore T-shirts and caps off-duty and in public and in Social Media stating Re-elect Rene Guerra;

37. In her last two years of employment, Maldonado was responsible for structuring the Hidalgo County District Attorney's Civil Asset Forfeitures Section's computer software transition from Ableterm to Odyssey. This was an expansive procedure requiring that Maldonado create and upload forms from Ableterm to the new computer system Odyssey. This responsibility fell to her alone; no other employee had the expertise to complete this transition.

38. This was not the type of job where political allegiance to Rodriguez was necessary to the effective formation and administration of the defendants' policies. Her job duties were ministerial in nature. She was not an employee whose decisions created or implemented policies. Nor did she have discretion in the performance of her duties or in selecting what duties to perform that were not severely limited by statute, regulations, or policy determinations made by the defendants or any supervisor.

39. Shortly after Rodriguez took office, he focused an inordinate amount of pressure on Maldonado to complete the transition from one system to another. The pressure was constant and got to the point that her need to respond to the frequent demands began interfering with her ability to complete the project. It was also evident that there was an ulterior motive as to why Rodriguez and his staff were putting so much pressure on Maldonado. Her work was proceeding on schedule and there was no pressing need for its completion sooner than had been projected. The ulterior motive became clear on August 8, 2015, after Maldonado completed the Ableterm Odyssey transition. As her continued employment was no longer necessary to complete this essential project, she was fired.

40. Neither defendant ever offered Maldonado any reason why she was terminated even after she repeatedly asked.   There was no legitimate reason to fire her, she was well-respected and she had an excellent track record.

41. Throughout her twenty (20) plus years of employment with the Hidalgo County District Attorney's Office, Maldonado served the citizens of Hidalgo County and the State of Texas in an exemplary fashion.

## PLAINTIFF--CHRIS YATES

42. Chris Yates was an employee of Hidalgo County and worked in the District Attorney's office from March 2005 through January 8, 2015.

43. Yates has been a law enforcement officer since 1993. He graduated from the Rio Grande Valley Police Academy at San Benito and Immigration Inspector Training in 2002. He began his law enforcement career with the City of San Benito. Over his career, Chris Yates

received the following awards: Lifesaving and Burglary awards from the City of San Benito; Outstanding service award from the Hidalgo County Sheriff's Office; and Texas Narcotics Association Supervisor of the Year 2013.

44. Yates was hired by the District Attorney's office of Hidalgo County in March 2005 as a Criminal Investigator Task Force Agent. He then became a field supervisor, and was later promoted to Assistant Commander of HIDTA.

45. Yates's responsibilities in HIDTA were intelligence, security, TCIC/NCIC, task force officer, and assist the commander.

46. This was not the type of job where political allegiance to Rodriguez was necessary to the effective formation and administration of the defendants' policies. His job duties were ministerial in nature. He was not an employee whose decisions created or implemented policies. Nor did he have discretion in the performance of his duties or in selecting what duties to perform that were not severely limited by statute, regulations, or policy determinations made by the defendants or any supervisor.

47. Yates was not once written up for any performance deficiencies while he was an employee of the defendants.

48. As with Dora Muñoz, Yates worked primarily with and reported within the organizational framework of the Task Force; he had few dealings with the District Attorney's command staff in his day-to-day work.

49. Yates openly supported Guerra in his 2014 campaign for re-election. This fact was well-known in the community and to the defendants.  Yates's support for Rene Guerra included the following:

- Told people to vote for Rene Guerra and endorsed Rene Guerra;

- It was widely known that in past elections, Yates supported Rene Guerra by (i) wearing re-elect Rene Guerra t-shirts, and (ii) passing out re-election bumper stickers.

50. On or about January 8, 2015, just after Rodriguez took office as the District Attorney, Yates was fired "at the directive of Mr. Rodriguez."

51. No official of either defendant ever offered Yates any reason why he was terminated. There was no legitimate reason to fire him, he was well-respected and had an excellent track record.

52. Throughout his employment with the defendants, Yates served the citizens of Hidalgo County and the State of Texas in an exemplary fashion.

### PLAINTIFF--PALMIRA MUÑOZ

52. Palmira Muñoz was an employee of Hidalgo County and started January 10, 2000 to 2005, and was then rehired. After her rehire, she worked in the District Attorney's office from April 9, 2007, through January 8, 2015. Palmira Muñoz's job was intelligence analyst. Her job duties included: analyzing and interpreting legal documents and responding to most sensitive inquiries of complaints.

53. This was not the type of job where political allegiance to Rodriguez was necessary to the effective formation and administration of the defendants' policies. Her job duties were ministerial in nature. She was not an employee whose decisions created or implemented policies. Nor did she have discretion in the performance of her duties or in selecting what duties to

11

perform that were not severely limited by statute, regulations, or policy determinations made by the defendants or any supervisor.

54. Palmira Muñoz was a valuable, productive employee and was not once written up for any performance deficiencies while working for the defendants. Palmira Muñoz supported Rene Guerra in the 2014 election by:

- Attending the  Re-elect Rene Guerra 2014 campaign kick-off party;

- In prior elections it was widely known that Palmira wore re-elect Rene Guerra t-shirts, and had re-elect Rene Guerra campaign bumper stickers.

It was widely known in the community and to the defendants that Palmira Muñoz was supporting Rene Guerra in the 2014 campaign election.

55. As with Dora Muñoz and with Yates, Palmira Muñoz had secret clearance.

56. Palmira Muñoz is the sister of Dora Muñoz. And, because of her association with her sister, the defendants assumed that her political views were consistent with those of her sister.

57. On January 8, 2015, just after Rodriguez took office as the District Attorney, she was fired "at the directive of Mr. Rodriguez."

58. Neither defendant ever offered Palmira Muñoz any reason why she was terminated. There was no legitimate reason to fire her, she was well-respected and had an excellent track record.

59. Throughout her employment with the Hidalgo County District Attorney's Office, Palmira Muñoz served the citizens of Hidalgo County and the State of Texas in an exemplary fashion.

## PLAINTIFF—ROGELIO "ROY" CAZARES JR.

60. Cazares was an employee of Hidalgo County and worked in the District Attorney's office from August 1983 to January 28, 2015. Cazares began at the District Attorney's Office as a clerk, and eventually progressed to the position of Human Resource Coordinator.

61. Cazares worked and reported to his supervisor Homer Vazquez the Chief Deputy Assistant District Attorney. In this position, he was also responsible for assisting employees with information regarding payroll, benefits, and other county policies. Cazares was also responsible for assisting assistant district attorneys with computer, video, and photo displays for trial. Roy Cazares was also responsible for the moving of criminal case file for morning court dockets.

62. This was not the type of job where political allegiance to Rodriguez was necessary to the effective formation and administration of defendants' policies. His job duties were ministerial in nature. He was not an employee whose decisions created or implemented policies. Nor did he have discretion in the performance of his duties or in selecting what duties to perform that were not severely limited by statute, regulations, or policy determinations made by the defendants or any supervisor.

63. Cazares was not once written up for any performance deficiencies during his employment with the defendants.

64. On January 28, 2015, Cazares was terminated "at the directive of Mr. Rodriguez."

65. Cazares openly supported Rene Guerra in his 2014 campaign for re-election. This fact was well-known in the community and to the defendants. Roy Cazares' support for Rene Guerra included the following:

- Assisted with  Guerra's campaign kickoff party;

- Assisted the campaign with putting up yard signs;

13

- Passing out re-election bumper stickers;

- Visiting and volunteering time at polling stations;

66. Neither defendant ever offered Cazares any reason why he was terminated. There was no legitimate reason to fire him, he was well-respected and had an excellent track record.

67. Throughout his employment with the defendants, Cazares served the citizens of Hidalgo County and the State of Texas in an exemplary fashion.

### PLAINTIFF--SANTOS LEAL

68. Santos Leal was an employee of Hidalgo County and worked in the District Attorney's office from December 2012 through January 2015.

69. Leal has been a law enforcement officer for over 20 years since his graduation from Lower Rio Grande Valley Academy in 1984. He began his law enforcement career that year with La Villa Police Department.

70. Leal became a Corporal in December 1991 and Sergeant in February 1992 at the Edinburg Police Department. Leal earned all Police Officer Certifications and acquired his Masters certification.  Leal also earned a physical fitness training certification to assess officers' fitness levels during routine training as well as new recruits.  He was also assigned as the narcotics investigator for the Edinburg Police Department from 2004 until 2007.

71. Leal was hired by the District Attorney's office of Hidalgo County in 2012 as an Investigator. Leal was assigned to investigate all cases that came into the District Attorney's Office and prepare said cases for court. Leal also helped out HIDTA if needed, and any other assignments that came up.

14

72. This was not the type of job where political allegiance to Rodriguez was necessary to the effective formation and administration of the defendants' policies. His job duties were ministerial in nature. He was not an employee whose decisions created or implemented policies. Nor did he have discretion in the performance of his duties or in selecting what duties to perform that were not severely limited by statute, regulations, or policy determinations made by the defendants or any supervisor.

73. Leal openly supported Guerra in his 2014 campaign for re-election. This fact was well-known in the community and to the defendants. His support for Guerra included the following:

- Attended Mr. Guerra's campaign events;

- Assisted the campaign with putting up yard signs;

- Went door to door contacting citizen informing them of Rene Guerra's qualifications;

- Passing out re-election bumper stickers;

- Appeared as a supporter in several photographs on Guerra's campaign Facebook page;

- Volunteered time at polling stations;

74. Leal was not once written up for any performance deficiencies during his employment with the District Attorney's office.

75. On January 8, 2015, Leal was fired "At the directive of Mr. Rodriguez."

76. Neither defendant ever offered Leal any reason why he was terminated. There was no legitimate reason to fire him, he was well-respected and had an excellent track record.

15

77. Throughout his employment at the Hidalgo County District Attorney's Office, Leal served the citizens of Hidalgo County and the State of Texas in an exemplary fashion.

### PLAINTIFF--JORGE SALAZAR

78. Jorge Salazar was an employee of Hidalgo County District Attorney's Office from September 19, 2005, through March 11, 2015.

79. Salazar has been a law enforcement officer since 1996, when he graduated from South Plains College Levelland, TX. He began his law enforcement career that year with the Edcouch Police Department. Salazar was hired by the District Attorney's office of Hidalgo County on September 19, 2005, as a Hot Checks Division Investigator.

80. Salazar's responsibilities in the Hot Check Division were to perform criminal investigation work, investigate certain assigned criminal activities, and perform supplementary investigations to assist prosecutors in case preparation. He also prepared and executed search warrants and, arrest warrants, and served subpoenas.

81. This was not the type of job where political allegiance to Rodriguez was necessary to the effective formation and administration of the defendants' policies. His job duties were ministerial in nature. He was not an employee whose decisions created or implemented policies. Nor did he have discretion in the performance of his duties or in selecting what duties to perform that were not severely limited by statute, regulations, or policy determinations made by the defendants or any supervisor.

82. Salazar openly supported Guerra in his 2014 campaign for re-election. This fact was well-known in the community and to the defendants. Jorge Salazar's support for Rene Guerra

included the following:

- Attended Mr. Guerra's campaign events;

- He block walked and assisted in putting up campaign signs;

83. Salazar was not once written up for any performance deficiencies while employed by the defendants.

84. On March 11, 2015, Leal was fired "at the directive of Mr. Rodriguez."

85. Neither defendant ever offered Salazar any reason why he was terminated. There was no legitimate reason to fire him, he was well-respected and had an excellent track record.

86. Throughout his employment with the defendants, Salazar served the citizens of Hidalgo County and the State of Texas in an exemplary fashion.

### CAUSE OF ACTION AND DAMAGES

87. The First Amendment of the Constitution of the United States guarantees every citizen the right to freedom of speech, which includes the right to engage in political activities, to campaign and run for public office, and to associate with an individual exercising that individual's right to freedom of speech.

88. When each of these plaintiffs were fired by the defendants, the law was well-settled that terminating a public employee because of that individual's support for an individual running for elected office violated a clearly-established constitutional right.

89. The law was also well-settled at the time that terminating a public employee because the employee was associated with an individual exercising his or her right to freedom of speech violated a clearly-established constitutional right.

17

85. The plaintiffs' rights under the first amendment outweighed the interest of the defendant(s) in promoting the defendants' efficiency. Their actions did not have, and could not reasonably be expected to have, a detrimental effect on the defendants' efficient delivery of public services.

86. Rodriguez was acting "under color of state law" when he deprived the plaintiffs of their rights under the Constitution of the United States.

87. As a District Attorney, Rodriguez is an official policy-maker of Hidalgo County. He was authorized to and had final authority to terminate the plaintiffs. Rodriguez abused or misused a power that he possessed only because he was an official of Hidalgo County, Texas.

## RELIEF REQUESTED

88. The plaintiffs ask that this Court enter a judgment:

(1.) Declaring that the acts and practices complained of in this Complaint are in violation of federal law;

(2.) Enjoining and permanently restraining the defendants from retaliating against them and employees who engage in activities protected by the first amendment;

(3.) Directing the defendants to pay damages for lost wages and employee benefits suffered by the plaintiffs and caused by the unlawful retaliation against them from the time of their termination to the time of trial;

(4.) Directing the defendants to pay the plaintiffs compensatory damages that they suffered, past and future, caused by the unlawful retaliation against them;

18

(5.) Directing the defendants to reinstate each plaintiff to his or her former or an equivalent position at a comparable rate of pay or, in the alternative, pay each individual's front pay for the maximum reasonable time into the future when he or she can be reasonably expected to secure substantially comparable employment with the same or better pay and benefits or when each reaches his or her normal retirement age;

(6.) Awarding Plaintiffs pre-judgment interest on the amounts owed at the maximum rate allowed by law;

(7.) Awarding Plaintiffs the costs of this action, together with reasonable attorneys' fees and expert witness fees;

(8.) Awarding Plaintiffs post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

(9.) Awarding Plaintiffs such other relief, legal or equitable, as may be warranted.

Respectfully submitted,

/s/ Sameer Ahmed

M. Sameer Ahmed*
*Ahmed, Alexander & Molina, LLP*
Federal Bar No. 487347
State Bar No. 24001631
4009 S. Sugar Rd.
Edinburg, TX 78539
Ph. 956-391-2754
Fax 956-391-2755
sameer@aamlawyers.com

*Attorney in charge for the plaintiff

19

Margaret A. Harris*
Federal Bar No. 87
State Bar No. 09081400
1007 Heights Boulevard
Houston, Texas  77008
713-526-5677
888- 370-5038 (fax)
margie@butlerharris.com
* Counsel for the Plaintiff